IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Swaysey Rankin, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 20 C 50280 |
| v. ) | |
| ) | Hon. Philip G. Reinhard |
| Wexford health Sources, Inc., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Defendants' objections [114, 115] to Magistrate Judge Schneider's Report and Recommendation denying their request for dismissal based on the affirmative defense of exhaustion are overruled, and the report and recommendation [110] is adopted in its entirety. The case is returned to Magistrate Judge Schneider to continue with the supervision of discovery.

## STATEMENT-OPINION

Plaintiff Swaysey Rankin, an inmate at Dixon Correctional Center, alleges that he had a dangerously enlarged thyroid making it painful to eat, swallow, and even breathe. The problem began in June of 2017. However, despite repeatedly seeking medical attention and filing multiple grievances, the problem was not adequately addressed until January 2019 when his thyroid was removed. Plaintiff complains primarily about this year and a half delay. Magistrate Judge Schneider held a *Pavey* hearing to address defendants' exhaustion defense. At issue were five grievances plaintiff filed on the following dates: (1) November 28, 2017; (2) March 3, 2018; (3) July 20, 2018; (4) July 24, 2018; and (5) October 18, 2018. The *Pavey* hearing took place over two days. Plaintiff and two other witnesses testified, and briefs were submitted. In an eight-page Report and Recommendation ("R&R"), Magistrate Judge Schneider recommended that the exhaustion defense be denied. Defendants filed objections; plaintiff filed a response; and defendants filed a reply. The parties raise the same basic arguments here that they raised with the Magistrate Judge.[1]

In the R&R, Magistrate Judge Schneider did not consider the March 3, 2018 grievance because she found the other four were sufficient. These grievances fall into two groups—the first grievance (November 28, 2017) and then the remaining three from the middle part of 2018. The issue is different for each group.

For the November 28, 2017 grievance, the issue is not whether plaintiff completed a full

---

[1] The court may accept, reject or modify, in whole or in part, the findings or recommendations of a report and recommendation. *See* Fed. R. Civ. P. 72(b)(3). The court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

round of appeals. Rather, it is whether this grievance was relevant to the allegations in the complaint. Each side focuses on a different portion of this grievance. In the first portion, plaintiff described his thyroid problem generally, noting that he had been "complaining about [it] for months" and had only received Tylenol that didn't work and that it was hurting him so bad he had trouble swallowing. In the latter portion of the grievance, plaintiff focused on a narrower issue, which was his allegation that a correctional officer required him to sign a co-pay voucher during a recent medical visit. Plaintiff argues that the first portion of this grievance clearly alerted officials to his ongoing thyroid pain and that this one grievance was thus enough by itself under a continuing violation theory. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (holding that an inmate need not "file multiple, successive grievances raising the same issue" if the same condition is continuing). Defendants rely on the latter portion, arguing that the grievance as a whole was not "about a failure to treat or delay" medical treatment. [118 at 6.] Defendants downplay the first portion, arguing that it merely provided "history and background for the actual subject matter of the grievance itself." *Id.* at 2.

Magistrate Judge Schneider found plaintiff's argument more persuasive. Even though she agreed that the grievance "chiefly concerned" the voucher issue, she noted that it also "did describe [plaintiff's] thyroid condition, state that the treatment he received was inadequate, and request that he be seen for his medical issue." She thought this was enough to put officials on notice. After reviewing the issue *de novo*, this court agrees. The voucher clearly discusses both the unresolved thyroid problem generally as well as the specific voucher issue. The thyroid problem is mentioned first, and not merely in a passing manner. Plaintiff provided details about the symptoms (a swollen neck and an inability to move it "from side to side or even swallow at times") and stated that the treatment (take Tylenol) had been ineffective. Plaintiff also complained that the problem had been going on "for months." Thereafter, the grievance focuses on the discrete voucher issue. In short, plaintiff described two separate issues. This view is supported by the fact that the form contained a section at the top entitled "Nature of Grievance," which included numerous boxes an inmate could check to identify the type of grievance. Plaintiff checked two boxes—"Staff Conduct" and "Medical Treatment." Defendants argue that plaintiff checked the latter box merely because he had complained at one point in the body of the grievance that the correctional officer's actions may have violated "the HIPPA law." Perhaps this is one way to interpret the form, but it is not the most convincing in this court's view. For one thing, it is not obvious that a HIPPA violation would naturally be categorized as a failure to provide medical treatment as opposed to being something more akin to an administrative issue. This point aside, there was a separate box at the top of the form specifically labelled "HIPAA." But plaintiff did *not* check that box. This cuts against defendants' interpretation. To the extent that both sides have offered equally reasonable interpretations, the court should give plaintiff the benefit of the doubt. *See Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) ("failure to exhaust is an affirmative defense, and as such the burden of proof is on the defendants to establish that administrative remedies were not exhausted, and not on the prisoner to show that administrative remedies were unavailable.").

However, even if that argument were not sufficient, plaintiff can still prevail based on his alternative argument that the three grievances filed in the summer and fall of 2018 were sufficient. Here, the issue is not whether the grievances were relevant (everyone agrees they all complained about the ongoing thyroid problem), but whether plaintiff should be excused for not appealing these grievances. Magistrate Judge Schneider again agreed with plaintiff's argument. Here are the pertinent facts, which are not in dispute. All three grievances (July 20th, July 24th, and October

18th) were received by the grievance counselor within a few days after being submitted by plaintiff. However, the counselor did not respond to them until September 25, 2019. This was 14 months after the two July grievances and 11 months after the October grievance. (Defendants have offered no explanation for why there was such a long delay.) On each of the three grievances, the counselor handwrote the following: "A copy of this grievance was sent to [the Healthcare Unit] on Approx. date. No response has been received. If still issue send to next level."[2] At the *Pavey* hearing, plaintiff testified that he was unsure what to do after receiving these responses and asked a counselor for advice. Here is plaintiff's testimony on this point: "I had asked [the counselor] since I got my thyroid tooken out, [] do I still go through with this. He say no, [] because you not having an issue with it no more." [113 at 175.] The Magistrate Judge found this testimony credible, and defendants do not challenge that finding here.

Magistrate Judge Schneider considered whether plaintiff was excused from further appeals because the prison officials rendered the grievance process "unavailable" by failing to "respond properly." [110 at 7 (quoting *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022).] She concluded that it was unavailable for several reasons. First, the counselor's long delay in responding (11 to 14 months) was by itself enough to make the process unavailable. Second, the counselor's written responses—particularly the statement "if still issue send to next level"— reasonably could have been interpreted by plaintiff to mean that he "should not—and perhaps could not—send his grievance to the next level if his thyroid condition was no longer an issue." [110 at 7.] Third, plaintiff was told by a counselor that he "did not need to proceed to the next level since his condition had already been addressed by the surgery." *Id.* Fourth, it "made intuitive sense" for plaintiff to follow this oral recommendation because further administrative appeals would only be seeking "relief already received." *Id.* Or, as plaintiff puts it more directly in his response brief: "It would have been pointless to request a thyroidectomy *after* his thyroid had been removed." [117 at 14 (emphasis in original).]

Defendants raise two main objections to this analysis. First, they make a textual argument regarding the seven-word phrase "if still issue send to next level." They believe that this statement (in their words) "explicitly directed [plaintiff] to submit his grievances to the next level." [114 at 7.] In short, it was a command. However, this court, like Magistrate Judge Schneider, does not read this language as being so clear-cut. The initial word "if" immediately introduces an element of uncertainty. Also, the phrase is vague about what the precise "issue" is that the counselor is referring to. If this were meant to be an explicit directive in the way defendants are now suggesting, you would expect to see the word "must" or some other mandatory language. At a minimum, the phrase is vague. And this is where defendants' textual argument runs into problems. It does not confront plaintiff's additional argument that the counselor subsequently clarified the ambiguity. It is undisputed that plaintiff was told, directly and unequivocally, that he need not continue the grievance process because his thyroid problems had been resolved by the January surgery eight months earlier. Defendants ignore this part of plaintiff's argument, focusing only on the written statement. In sum, this court agrees with Magistrate Judge Schneider that the particular facts in this case, including the arguably conflicting written and oral statements, "presented unintuitive, conflicting directions regarding the grievance appeals process, effectively obscuring the process." *King v. Dart*, --- F.4th ---, 2023 WL 2594964, *4 (7th Cir. Mar. 22, 2023).

---

[2] This quotation is from the July 20th grievance. The other two have a few minor non-substantive differences in wording.

3

Second, defendants argue that plaintiff was well aware of the need to appeal his grievances all the way up the Administrative Review Board ("ARB"). Defendants note that plaintiff received an orientation manual and training on the grievance process; he was able to appeal the November 28, 2017 grievance all the way to the ARB despite not getting *any* response to that grievance; and he has filed several other *pro se* cases in which he presumably exhausted his remedies. There is no dispute that plaintiff generally knew how the grievance process was supposed to work in the normal case. But the disputed issue is what inference should be drawn from this fact as it relates to this atypical case. Defendants argue that plaintiff's experience means that he should have known that he had to continue the grievance process. Plaintiff suggests the opposite. He argues that his diligence in exhausting *other* grievances shows that he was genuinely confused by the counselor's confusing statements, both written and oral, in *this* case. This court, again considering the issue *de novo*, reaches the same conclusion as Judge Schneider and finds plaintiff's argument more persuasive. As explained in the R&R, the various steps taken by prison officials—first the long delay, then the ambiguous written response, and finally the unambiguous oral response—were enough to cause confusion. *See Hacker v. Dart*, 62 F.4th 1073, 2023 WL 2531505, *1 (7th Cir. Mar. 16, 2023) ("we have stressed that prisons should create understandable grievance procedures, ones clear and transparent enough to allow ordinary inmates to navigate them."). And as further noted in the R&R, a finding that plaintiff failed to exhaust his remedies by not appealing to the next level would mean "that prison officials can thwart liability for delaying medical treatment by delaying grievance responses even longer" than the treatment itself. [110 at 8.] Finally, to the extent this is a close call, the court again would find in plaintiff's favor because the burden of proof is on the defendants. *See Smallwood*, 59 F.4th at 315.

Date: 4/05/2023　　　　　　　　　　　　　　　　ENTER:

　　　　　　　　　　　　　　　　　　　　　　　*Philip G. Reinhard*
　　　　　　　　　　　　　　　　　　　　　　　United States District Court Judge

Electronic Notices.